## MORGAN v. HOAGE, Deputy Com'r.

### No. 6070.

United States Court of Appeals for the District of Columbia.

Argued May 8, 1934.

Decided July 23, 1934.

J. Harry Welch and Frank Paley, both of Washington, D. C., for appellant.

Edward S. Brashears, Wilson L. Townsend, Albert F. Beasley, and Leslie C. Garnett, U. S. Atty., all of Washington D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

PER CURIAM.

This case arises under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927 (44 Stat. 1424 [33 USCA §§ 901–950]), made applicable to the District of Columbia by Act of May 17, 1928 (45 Stat. 600 [D. C. Code 1929, T. 19, §§ 11, 12]).

It appears that James Frederick Morgan on September 29, 1932, was shot by an assailant while in front of his home in the District of Columbia, and that on October 4, 1932, he died as a result of his wounds. At the time of the assault and for some time prior thereto Mr. Morgan was an employee of the government at the United States Navy Yard, and at the same time he held the office of financial secretary of Columbia Lodge No. 174, International Association of Machinists.

The appellant, Eleanor M. Morgan, as his widow, thereupon filed a claim with the Compensation Commission of the District of Columbia for death benefits under the Compensation Act, naming the lodge as deceased's employer and the Standard Accident Insurance Company as the insurance carrier. The Deputy Commissioner, after hearing the testimony, held that the injury from which the deceased died arose out of his employment as financial secretary of the lodge, but that it did

not occur in the course of his employment. He therefore rejected the claim.

Mrs. Morgan then filed her bill in equity in the lower court seeking a mandatory injunction to compel the Deputy Commissioner to set aside the order of rejection and to award compensation. The lower court dismissed the bill and the present appeal was taken from that decree.

The sole employment of the deceased involved in the present case is that of financial secretary of the lodge as above stated. It appears that the duties of financial secretary were to collect the dues from the members of the lodge; these were first collected from the individual members by the shop stewards in each shop; the stewards then delivered their reports together with the money collected by them to the financial secretary. When a shop steward turned the money over to the financial secretary, the latter would take each man's card, put a stamp thereon, and return the same to the shop steward. This was generally done after work hours, but sometimes the shop stewards would turn the money over to Mr. Morgan in the morning, or they might give him the money when at work, or at noon on pay days, or in the evening when he would meet a few at the office. These duties were largely of a clerical nature and it was Mr. Morgan's custom to work at the lodge hall which was located at Fourth street and Pennsylvania Avenue S. E., every evening except Saturdays and Sundays from about 7 p. m. to approximately 11 or 12 p. m., and also to work at the lodge hall on Saturday mornings.

■ On the date of the shooting he left his employment at the Navy Yard and proceeded to his home at 3629 Jocelyn Street N. W., Washington, D. C.; and at that time he had in his possession some money which he had collected from members of the lodge and some books which belonged to the lodge which, as a matter of convenience, he was taking to his home with the intention of bringing them to the lodge hall when he returned that evening. After having his dinner at his home some time between 6 and 7 p. m., he informed his family of his intention of going to the lodge hall, whereupon he left the house, walked out on the sidewalk to the street, and as he was about to enter his automobile, or had already entered it for the purpose of driving to the lodge hall, he was shot by a man named Kieser and died as a result of his wounds. It appears that Kieser committed the crime from a wholly unjustifiable resentment against Morgan arising from the latter's inability to induce the lodge to pay to Kieser a sum of money which Kieser claimed to be due him.

The Deputy Commissioner found upon the facts that the injury resulting in Morgan's death arose out of his employment by the lodge, but that it did not occur in the course of such employment. The sole question before us is whether this finding is, or is not, supported by substantial evidence in the record. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598; Voehl v. Indemnity Insurance Company, 288 U. S. 165, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245; Powell v. Hoage, 61 App. D. C. 99, 57 F.(2d) 766.

We are of the opinion that the finding of the Deputy Commissioner is supported by the evidence. In section (2) of the Compensation Act (33 USCA § 902) it is provided: "The term 'injury' means accidental injury or death arising out of and in the course of employment." In In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, it is said: "In order that there may be recovery the injury must both arise out of and also be received in the course of the employment. Neither alone is enough. * * * It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

■ In order to determine whether the injury in this case arose "in the course of" the deceased's employment, reference must be had to the time, place, and circumstances under which the injury occurred. The deceased's office, which was provided for his use by the lodge, was located several miles from his home. The testimony discloses that it was Mr. Morgan's invariable habit to come home in his own car every afternoon for dinner, and as quickly as possible to dress, eat his dinner, look over the paper for a few moments, and then go back to the office at the lodge room at the Naval Lodge Building. On the occasion in question he had come home to take dinner with his family in his usual way after the day's work. He had some money with him which he had collected, and he expected to take this back to the office in order to transfer it to the treasurer. After dinner he left the house expecting to go as usual to his office at the lodge building, but he was shot by his assailant either before he

got into his car or after alighting from it when he saw his assailant approaching.

In our opinion the Deputy Commissioner was right in holding that the injury sustained under these circumstances did not occur in the course of the deceased's employment. He was not at the time of the occurrence performing any service which he was required to do by virtue of his employment as financial secretary of the lodge. His return to his home for dinner was not in any sense in the line of his employment, but was purely personal. It is true he carried with him some money and books which belonged to the lodge and which he expected to take with him to his office, but his employment did not contemplate or require that he should perform any of his duties at home at the dinner hour or on his way to or from his home. He intended to return to his office and there in regular course to take up his duties and continue their performance late into the night.

■ The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Voehl v. Indemnity Insurance Co., 288 U. S. 165, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245; DeVoe v. N. Y. State Railway Co., 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A, 250; Nesbitt v. Twin City Forge & Foundry Co., 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165; N. K. Fairbank Co. v. Industrial Commission, 285 Ill. 11, 120 N. E. 457. In the present case it cannot rightly be said that the shooting occurred when the employee was either going to or returning from his regular place of work. It is true that various well-defined exceptions exist to this rule, but none of them applies to the case at bar. Cronin v. American Oil Co., 298 Pa. 336, 148 A. 476; Enterprise Foundry Co. v. Ind. Acc. Com., 206 Cal. 562, 275 P. 432; Eby v. Ind. Acc. Com., 75 Cal. App. 280, 242 P. 901; Scanlon v. Herald Co., 201 App. Div. 173, 194 N. Y. S. 663; Franco v. LeRoy Embroidery Co., 202 App. Div. 770, 194 N. Y. S. 935; Greer v. Ind. Com., 74 Utah, 379, 279 P. 900.

We have not overlooked the case of Field v. Charmette Knitted Fabric Co., 245 N. Y. 139, 156 N. E. 642, upon which appellant relies. In that case the injury arose when the superintendent of a mill, who, having discharged an employee and finding him in the building after the closing hour, ordered him to leave, whereupon angry words followed and, a few minutes later, when the superintendent went downstairs and out of the building, the employee, waiting for him on the sidewalk a few feet from the door, challenged him to fight and upon his trying to walk away struck him in the face, causing him to fall backward, fracturing his skull, from which he died. The injury was one that might fairly be found to have arisen "out of" the employment and an argument that it did not arise in the course of employment for the reason that, after finishing the work of the day, the assaulted man had left the mill and was out upon the public sidewalk was not sustained. It was held that the quarrel outside of the mill was merely a continuation or extension of the quarrel begun within; that the rule is that an employee even after closing time is in the course of employment until a suitable opportunity has been given to leave the place of work; for which reason claims have been sustained for injuries on stairs or in elevators, though the stairs or elevators were not controlled by the employer. The circumstances of such a case are palpably different from those involved in the instant case.

In our opinion the decree of the lower court dismissing appellant's bill should be, and it is, affirmed.