## CAPITAL TRANSIT CO. v. HOAGE (Parrott, Intervener).

### No. 6547.

United States Court of Appeals for the District of Columbia.

Decided April 27, 1936.

G. Thomas Dunlop, H. M. Keyser, S. Russell Bowen, H. W. Kelly, and R. Sidney Johnson, all of Washington, D. C., for appellant.

Leslie C. Garnett, Allen J. Krouse, and James F. Reilly, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case arises under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424; 33 U.S.C.A. §§ 901–950 [made applicable to the District of Columbia 45 Stat. 600; D.C.Code 1929, tit. 19, c. 2, §§ 11, 12, 33 U.S.C.A. § 901, note]).

The case involves a claim for compensation filed with the Deputy Commissioner of Compensation, for death benefits in behalf of the widow and minor children of John S. Parrott, deceased, who died as a result of electrocution while working in the repair shop of the Capital Transit Company, a self-insuring corporation.

The employer did not deny the death of the workman, or the relationship of the claimants with decedent, but alleged that the workman's death resulted from an accident which did not "arise out of and occur in the course of" the employment of the deceased while engaged in the service of the corporation. The employer therefore denied that the accident was compensable.

The Deputy Commissioner, after hearing the testimony, held that the claim was compensable and granted an award upon it.

A suit was then brought by the employer in the Supreme Court of the District of Columbia praying the court to set aside the award, upon the ground that it was not supported by any evidence. The court dismissed the bill and the present appeal followed.

It appears that at the time of the accident Parrott was employed by the defendant company as a workman engaged in the repair of various articles of electrical equipment such as are used in the construction of street cars, including among others control cylinders; that such cylinders while undergoing repairs would be entirely free from electrical contacts or currents and could be handled at the work bench without danger. However, after the completion of such repairs, the cylinders must be tested by passing through them an electrical current of very high and dangerous voltage, by means of which process any leaks remaining in the repair work can be detected.

Before Parrott went to work in the repair shop, Mr. Erb, the foreman of the department in which Parrott was working, spoke to him in part as follows:

"Now, Parrott, you have had quite a few accidents, and our department seems to run along very nicely without accidents, and I don't want you to handle anything alive, or make any tests, or so far as even turning on the lights."

On the day of the accident Parrott began working upon a certain control cylinder and finally completed its repairs in so far as could be done without putting it to an electrical test. For the purpose of applying such a test, Parrott took the cylinder

to an electrical testing machine and there subjected it to a voltage of 1,500 volts. When applying this test, Parrott apparently made no effort to protect himself from contact with the electrical current, although the means for such protection, such as insulated gloves, were at hand and could easily have been made use of by him. As a result of this action by Parrott, the current was passed through his body and he was instantly electrocuted.

The electrical testing machine was on the same floor with Parrott's work bench and about 100 feet distant from it. It seems that at the time of the accident there was but one other workman at work in the same part of the shop with Parrott. The name of this workman was Marsden. Marsden had frequently used the same electrical testing machine which Parrott used when testing the repair work. When Parrott left his work bench with the cylinder to go to the testing machine and before putting the completed cylinder in the machine, he passed Marsden and told him he was about to do so. Marsden answered him and said: "All right, put 1,500 on it."

It was claimed by the company that when Parrott undertook to apply the electrical test to the article, he did so in defiance of the orders given to him by Mr. Erb, and consequently that his action in applying the machine was outside of the scope of his employment at that time, and therefore that his accidental death did not arise out of and occur in the course of his employment. The company therefore denied that compensation should be awarded under the statute.

The Deputy Commissioner after hearing the testimony in the case made the following award:

"It is found that the employee was engaged in repairing control cylinders by removing worn plates and placing new plates on the control cylinders in place of the worn ones; that the plates were at the beginning of certain circuits on these cylinders, each plate carrying through a certain circuit electrical current, each series of current being insulated from the cylinder itself to avoid short circuiting and also insulated so that the current could not come in contact with an adjacent plate; that the final operation in the repair of these cylinders is the electrical testing to determine if the circuits are complete and properly insulated before using them as a part of the electrical equipment.

"The testimony of the general manager indicates that instructions not to touch live connections or apparatus had been given to said employee, but that no specific instructions about any individual machine had been given; that the said employee had been working on a bench with a co-employee by the name of Marsden, who had been doing all of the testing of these cylinders when completed; that after completing the repair work on one of the cylinders the said employee proceeded to the machine and the next instant he was found electrocuted as above described.

. "It is found, therefore, that the injury and death arose in the course of the employee's employment and out of the employment and that his act in testing the said cylinder did not constitute a deviation from his duties and that by so doing he did not take himself out of the scope of his employment. * * *"

We think that the award made by the Deputy Commissioner is supported by evidence and should be affirmed.

The work which Marsden and Parrott were employed to perform was intended to complete the repairs of such cylinders so that a high electrical voltage could be passed through them without leakage. The repairs could not be entirely completed without applying such a test to the articles. Therefore, before the repairs could be regarded as completed, it was necessary to apply such a current of electricity to the articles themselves. For this purpose an electrical testing machine equipped to apply the necessary voltage was kept in the repair shop and its use in testing the repairs was required before the repaired articles could be passed as finished. The two operations therefore were necessarily parts of the same general purpose for which Parrott was employed, and when Parrott made use of the electrical testing machine it was a step in the completion of the work which he had begun at his work bench. It does not seem under these circumstances that Parrott's disobedience to the instructions given him by Erb should have the effect of dismissing him from the company's service while making such a test.

Under these circumstances, the order given to Parrott by Mr. Erb before he began work in the department may be regarded as an admonition intended to direct the manner in which Parrott should work while repairing the cylinders, without, however, having the effect of separat-

ing Parrott from the employment of the company in case he did not obey it. Therefore, although Parrott while engaged in the work did not obey the instructions given to him by his employer, he continued nevertheless to work in the employment of the employer and his accidental death arose out of it.

It cannot be denied that issues similar to this have been variously passed upon by different courts and other authorities. We think, however, that our conclusion is sustained by a fair appreciation of the purpose of the compensation act.

In Wettstein v. Whitall-Tatum Co., 127 A. 323, 3 N.J.Misc. 99, it was held that where a plant superintendent was admonished by a superior officer to stay out of a certain place containing an electrical transformer, the superintendent in entering the place to repair the transformer was not guilty of such willful disobedience of orders as to preclude recovery for his death from contact with the electric wiring.

In Mobile Liners, Inc., v. McConnell, 220 Ala. 562, 126 So. 626, 627, the court said:

"The construction of the statute is to the effect that it embraces all injuries that arise out of, or occur while a workman is doing what a man under like facts and circumstances, engaged in that or like employment, may reasonably do within the time, place, and business during which he is employed. That is, may reasonably do (1) within the time during which he is employed, and (2) at a place where he may reasonably be during that time, (3) in the conduct or projection of the employer's said business or work, or in the promotion or safeguarding of his said business. * * * And this has been held to·cover all injuries 'arising out of the employment' in the act or conduct proximately referable, though it may not be within the scope of authority or strict line of duty, and may not be an anticipated risk or service, if the act reasonably related to the service and was done in good· faith and in furtherance of the employer's business."

In Olson v. Robinson, Straus & Co., 168 Minn. 114, 210 N.W. 64, it was held that a stock boy in a department store, apparently killed while running an elevator, the operation of which was not his duty and was strictly forbidden to him, was still within the protection of the compensation act The court said:

"That the employee may have been acting in disobedience of orders at the time of the injury does not necessarily place him outside the protection of the act. Frint Motor Co. v. Industrial Commission, 168 Wis. 436, 170 N.W. 285; Schneider's Workmen's Compensation Law, 624 et seq."

In the Frint Motor Case, supra, the employee was directed to perform his work in a designated place, but left it to further his master's interest and was killed. The court held him. to be within the act, although he had absolutely disobeyed his master's orders requiring him to remain in a pit to repair cars which were racing. The court said:

"It appears from the record that, during the course of one of the races, a car of appellant skidded and came to a stop near the fence a short distance from the point where Healey was standing upon the fence watching the races. As soon as his employer's car stopped, he jumped from the fence and ran toward it, but, before he reached it, was struck by an on-coming car and killed. We are satisfied that deceased was at the time of the injury acting within the scope of his employment, and the mere fact that he disobeyed orders does not defeat recovery." [Cases cited.]

The case of Hartz v. Hartford Faience Co., 90 Conn. 539, 97 A. 1020, 1021, held that Hartz, who was a clerical worker, sustained a compensable injury while lifting a barrel. The court said:

"What he was engaged in doing was for his master's benefit and to push on his work. If a workman depart temporarily from his usual vocation to perform some act necessary to be done by some one for his master he does not cease to be acting in the course of his employment. He is then acting for his master, not for himself."

In Corrina v. De Barbieri, 247 N.Y. 357, 160 N.E. 397, 398, it was held that a teamster who went to sleep on the wagon seat after driving his team on board a ferry and who was jolted from the seat and mortally injured when the team started had not made a departure from his employment. The court said:

"Departure from the strict line of his duties does not conclusively establish that he was acting at the time entirely outside of his employment."

Another New York case is that of Macechko v. Bowen Mfg. Co., 179 App.Div.

573, 166 N.Y.S. 822, in which the operator of a press had been instructed not to put his hand within the press unless he first stopped the machine. He failed to obey this instruction and in removing some small pieces of steel from the die of the press he was injured. The court affirmed an award by the Industrial Commission based upon the finding that the injury sustained by the employee arose out of his employment. See, also, Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Voehl v. Indemnity Ins. Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245; D. Del Vecchio v. Bonnie L. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229, decided by the Supreme Court of the United States on December 9, 1935.

Accordingly, we affirm the decree of the lower court with costs.

Affirmed.

ROBB, J., took no part in the decision of this case.