MARYLAND CASUALTY CO. v. CARDILLO, Deputy Com'r, et al.

No. 7360.

United States Court of Appeals for the District of Columbia.

Decided Nov. 13, 1939.

960

Charles B. DeShazo, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., William S. Tarver, Z. Lewis Dalby, Chief Counsel, U. S. Employees' Compensation Commission, and Charles T. Branham, Associate Counsel, U. S. Employees' Compensation Commission, all of Washington, D. C., for appellee Cardillo.

Austin F. Canfield and William T. Hannan, both of Washington, D. C., for appellee Najjum.

Before MILLER, EDGERTON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

This is a compensation case. The deputy commissioner made an award in favor of Mary Najjum, widow of James Najjum, a deceased employee. The insurance carrier sued in the District Court to enjoin enforcement of the award, and now appeals from a decree dismissing its bill.

At the hearing before the deputy commissioner there was evidence of the following facts, among others. The deceased, James Najjum was employed by an insurance company. He was required to make collections of industrial and other insurance premiums. He had no fixed hours. On the morning of January 20, 1937, he appeared to be in good health. In the course of that day he made some collections. It was his duty to turn in his accounts at his employer's office in the evening, and on that evening his supervisor waited for him until 10 o'clock. About 9 p. m. he was on a street-corner, obviously drunk, leaning against a post with his insurance "book" in his hand. A party of three men and a woman, in two cars, were stopped beside him by a traffic light. The woman and one of the men, Wolf, who was or had been in the insurance business, noticed the "book" and concluded that Najjum was an insurance man. Wolf said to the others "There is a cousin of mine," and they also understood that Najjum was an insurance man. The party put Najjum, who was unable to stand, into one of the cars, got in with him, and drove off. The car drove about, with occasional stops, for some time. Wolf believed that the other men of the party, Meinzer and Ricker, would rob Najjum. He was so sure of this that he left the party and went home. Afterwards there was "fussing" among the men, and Meinzer struck Najjum. Then Najjum was quiet, and Ricker said to Meinzer "You must have hurt the man." Meinzer said "He has got a watch," and Ricker said "Well, leave it alone." The car stopped on a secluded road, and Meinzer put Najjum out on the ground. The party left him there and drove off. Meinzer expressed surprise and indignation because the man had so little money on him. He said that he, Meinzer, "had two dollars and something from the man."

Before 2 a. m. on January 21, a passerby found Najjum lying dazed by the roadside. His billfold, with no money, was found a little later about 15 feet away. About 3:30 a. m. he was brought home in a dazed condition, his face brutally beaten up and swollen. His body was "very icy, like he had been out sometime in the rain." His little finger, which had a large ring on it, was broken. His insurance "book" and his watch were missing. He was taken to Sibley hospital. The next day, January 22, he had repeated convulsions and was given a "spinal tap" to relieve brain pressure. On that day he received the last sacraments. He was confined continuously to the hospital or his home, and almost continuously to his bed, until his death. It was stated in the sworn compensation claim, and never questioned throughout the compensation hearing, that he died, on February 6, of the injuries he had received on January 20.

Meinzer pleaded guilty of second degree murder and Ricker of manslaughter.

■ Appellant contends there was no proof that Najjum's wounds caused his death. We need not consider whether the evidence actually introduced would have been sufficient if the connection between wounds and death had been questioned at the compensation hearing. It is now too late to question it. "It is likely that if the point now raised had been urged at the hearing, abundant evidence would have been forthcoming." Metropolitan Casualty Ins. Co. v. Hoage, 67 App.D.C. 54, 56, 89 F. 2d 798, 800.

■ The compensation act[1] provides compensation for "injury," and contains this definition: "The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."[2] The deputy commissioner found, among other things, that the criminal risk or hazard to which Najjum was subjected "was peculiar to, and increased by, his employment as an insurance collector; that the assault and robbery were directed against him because of the said employment; that the injury and death arose out of and in the course of the employment." The deputy commissioner's findings of fact, if supported by evidence, are conclusive. Voehl v. Indemnity Insurance Corp. of North America, 288 U.S. 162, 166, 53 S.Ct. 380, 77 L.Ed. 676, 87 A. L.R. 245. Appellant denies that the evidence supports any of these findings.

■ We think it supports them all; but the view we take of the case makes it unnecessary to rehearse the evidence on the question whether the injury arose "out of and in the course of employment," and we have omitted most of that evidence. We think the evidence which we have recited supports the finding that the assault and robbery were "directed against" the employee because of his employment; and this is sufficient.

Common sense and common knowledge tell us that when a known insurance collector has his collection equipment with him, at the end of the day, he appears to be carrying money, and that a man who appears to be carrying money is more likely to be attacked and robbed than another man. It follows that, if Najjum's insurance "book" gave notice that he was an insurance collector, his employment exposed him to a special risk. He was in fact abducted, robbed, and murdered by persons who recognized him by his "book" as an "insurance man." If the deputy commissioner had found the relation between the observed employment and the abduction and murder to be one of pure coincidence, perhaps we could not have said that he was wrong. But that is not the question. We certainly cannot say that he was wrong in finding that there was a causal connection between the employment and the abduction and murder. He might reasonably conclude, as he did, that the employment not only subjected Najjum to special risk of attack but led to the actual attack. The relation between employment and attack therefore meets the strictest requirements of proximate or legal causation.

■ The term "injury," the statute tells us, "* * * includes an injury caused by the willful act of a third person directed against an employee because of his employment." Grammatically, this final clause of Section 2 (2) is unqualified; it is not cumulative with, but independent of, the statement in the first clause that injury "means accidental injury or death arising out of and in the course of employment." When the facts come, as they do here, within the final clause, we need not inquire whether the "willful" injury of the final clause can be regarded as "accidental." Similarly, we need not inquire whether it can be regarded as "arising * * * in the course of employment." No logical reason appears for distinguishing in this respect between the two parts of the first clause, and importing the later part, though not the earlier, into the final clause. Considerations of policy point in the same direction. If a man's employment exposes him to special risk of attack not only dur-

[1] Longshoremen's and Harbor Workers' Compensation Act, U.S.C. tit. 33, c. 18, § 901 et seq., 33 U.S.C.A. § 901 et seq., made applicable in the District of Columbia by D.C.Code, tit. 19, c. 2, §§ 11, 12, 45 Stat. 600, 33 U.S.C.A. § 901 note.

[2] Sec. 2(2), 33 U.S.C. § 902(2), 33 U. S.C.A. § 902(2).

ing working hours, but during certain off hours also, it is as socially desirable that the industry carry the off-hour risk as that it carry the working-hour risk. Both alike are hazards of the industry. Moreover, compensation acts "should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results."[3]

In Morgan v. Hoage, 63 App.D.C. 355, 72 F.2d 727, certiorari denied, 293 U.S. 606, 55 S.Ct. 122, 79 L.Ed. 697, an office worker, about to enter his car to drive to work, was murdered by a man who had demanded payment of an alleged obligation of the worker's employer. The deputy commissioner found that the injury arose out of the employment, but not in the course of the employment, and therefore refused compensation. This court sustained the District Court in dismissing a bill brought by the compensation claimant to set aside the order. The sole question, as this court said, was whether the deputy commissioner's finding was supported by substantial evidence. Clearly it was. There was no finding, and no contention that there should have been a finding, that the attack on the employee was directed against him because of his employment. There is such a finding here.

If Najjum's drinking was, as appellant contends, a violation of orders, that fact does not bar compensation. Capital Transit Co. v. Hoage, 65 App.D.C. 382, 84 F.2d 235. Appellant urges that the injury which caused death "was occasioned solely by the intoxication of the employee," and is therefore non-compensable by the terms of Section 3 (b). No doubt Najjum's intoxication was one cause of the bodily injuries which he received. But in order to conclude that they were "occasioned solely" by the intoxication it would be necessary to conclude not only that they were not occasioned by the employment, but also that they were not occasioned by the murderous assault which actually inflicted them.

Appellant contends there was no evidence that claimant was the wife of the deceased. The statute creates a presumption in any proceeding for the enforcement of the compensation claim, "that the claim comes within the provisions of this chapter."[4] Mrs. Najjum's sworn claim, filed with the deputy commissioner, stated that she was married to the deceased on August 22, 1909, at St. Andrews, Roanoke, Virginia, by a named clergyman. This statement was never contradicted. The appellant, though it asked that a marriage certificate be filed, did not dispute the fact of marriage at any stage of the proceedings before the deputy commissioner. On the contrary, appellant's counsel stated that the claim to compensation was controverted on four grounds, which he named. None of them had any relation to marriage, and it cannot be questioned now. Metropolitan Casualty Ins. Co. v. Hoage, supra.

Affirmed.

---

[3] Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S. Ct. 187, 189, 76 L.Ed. 366.

[4] 33 U.S.C. § 920(a), 33 U.S.C.A. § 920(a).