VOEHL *v.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.

No. 315. Argued January 13, 1933.—Decided February 6, 1933.

*Mr. Israel J. Mendelson* for petitioner.

*Mr. G. Bowdoin Craighill,* with whom *Messrs. Frederic D. McKenney* and *John S. Flannery* were on the brief, for respondent.

Mr. Chief Justice Hughes delivered the opinion of the Court.

By the Act of Congress of May 17, 1928 (45 Stat. 600, D. C. Code, Tit. 19, §§ 11, 12), the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U. S. C., §§ 901–950) are made applicable to employees, as stated, in the District of Columbia. Petitioner, Karl F. Voehl, an employee of the National Electrical Supply Company, which was engaged in business in the District, filed a claim for compensation for an injury sustained through an automobile accident while he was on his way to his employer's place of business on Sunday, April 6, 1930, for the purpose, according to his contention, of performing the duties assigned to him. The employer was notified and hearing was had before the deputy commissioner. Respondent, the insurance carrier of the employer, contested the claim. Admitting that the relationship of employer and employee existed on the date of the injury and that the employer was subject to the Compensation Act, respondent defended upon the ground that the injury did not arise out of and in the course of the employment. The deputy commissioner received the evidence offered, which included the testimony of the employer's manager with respect to the petitioner's duties, and made a compensation order setting forth detailed findings of fact supporting the claim and awarding compensation.

Respondent then filed a bill of complaint in the Supreme Court of the District to obtain an injunction restraining the enforcement of the compensation order and annexed to the bill, as a part thereof, the full record of

the proceedings and evidence before the deputy commissioner. Respondent charged that the compensation order, findings and award, were not in accordance with law and were not supported by the evidence. Petitioner was permitted to intervene. Motion by the deputy commissioner to dismiss the bill of complaint was granted and decree was entered accordingly. On appeal, the Court of Appeals of the District, taking a different view of the evidence, reversed the decree, 58 F. (2d) 1074, and the case comes here on certiorari.

The relation of master and servant admittedly existed. The business of the employer, carried on within the District, and the nature of the petitioner's employment, were such that both were subject to the Compensation Act. D. C. Code, Tit. 19, §§ 11, 12. By the express provisions of the Act, the deputy commissioner was authorized to entertain the claim of the employee and "to hear and determine all questions in respect of such claim." 33 U. S. C., § 919 (a). The proceedings of the deputy commissioner conformed to the statute. The precise issue, whether the injury arose out of and in the course of the employment, turned on the general nature and scope of the employee's duties, the particular instructions he had received and the practice which obtained as to work in extra hours or on Sundays, and the purpose of the journey in which he was injured. We think that there can be no doubt of the power of the Congress to invest the deputy commissioner, as it has invested him, with authority to determine these questions after proper hearing and upon sufficient evidence. And when the deputy commissioner, following the course prescribed by the statute, makes such a determination, his findings of fact supported by evidence must be deemed to be conclusive. *Crowell* v. *Benson,* 285 U. S. 22, 46, 47; *L'Hote* v. *Crowell,* 286 U. S. 528.

The deputy commissioner found that petitioner was injured while on his way to the employer's warehouse for

the purpose of clearing it of debris in accordance with his duties, and that when so engaged on Sunday the terms of his employment covered the period of service from the time he left his home until his return, his compensation for this service being at an agreed rate per hour for the entire time with an allowance for his transportation. We think that these findings were supported by the proof. From the testimony of the employer's manager, who had supervision of petitioner's work, it appeared that petitioner, being employed in the ' refrigeration division ' of the Supply Company, had charge of the maintenance and operation of the company's warehouse and of the maintenance of service on refrigerators in customers' homes. He was the "head of the products division." With other matters, it was his duty to see that the buildings and stock were kept in proper order and that there was compliance with the fire rules. He had strict instructions with respect to the disposition of debris and their prompt removal. Voehl was a trusted employee who had been with the company for sixteen years and the company relied upon him to attend to whatever was necessary in the line of his work without specific or detailed instructions. His regular hours at the company's building were from 7:30 A M. to 5:30 P. M. The manager testified that, in addition to these hours, Voehl was " on duty all of the time, on our call. That is to say, he was a very willing employee and we kept him purposely for taking care of emergencies and seeing that all details were cleaned up properly." By reason of the 24-hour service which the company maintained, Voehl was always subject to the calls of customers, responding either personally or through one of the service men under his direction. He had access to the warehouse at all times. Voehl used his own automobile, and when he was at work for the company outside of " office hours " and on Sundays he was paid a mileage rate of five cents a mile for the use of his car and at the rate of 75 cents per

hour from the time he left his home until his return. As the one in charge of the warehouse and service, Voehl submitted weekly a memorandum of the overtime of the employees under him and his own. The company had found him to be honest in his statements and his overtime account was never questioned.

Respondent's contention was that Voehl was going to the warehouse for a purpose of his own,—to obtain ashes to place in front of his house, being accompanied by his brother-in-law to assist him in their removal. The evidence showed that the company did not object to the employees taking ashes but their removal was not part of Voehl's work. Voehl's statement was that the purpose of his Sunday trip was to remove an unusual accumulation of trash, which it was his duty to remove, and that under his orders it was necessary for him to do this on Sunday in order that the building might be in proper condition on the following morning. He said that he often had "to come down on Sundays to finish cleaning up"; that the manager inspected the warehouse "every Monday morning to see that it was free of all trash" and that he (Voehl) did his utmost "to have the building clean for inspection." While his brother-in-law testified as to the intention to take the ashes, he also said that Voehl "went there specifically to straighten up the warehouse and bring the ashes back home when he came back." Voehl's statement as to the necessity of his trip on the particular Sunday, in the course of his duties, finds corroboration in the testimony of the manager. The latter said that Voehl had authority to go to the plant on the Sunday in question and that he could have made a charge for his service on that day and for his mileage. While the manager did not himself know the condition of the plant on the day of the accident, or the day before, he did know that there had been an unusual amount of unpacking of refrigerators during the

three days before the accident and that such work was "always attended by a large accumulation of trash and litter which must be cleared up." He said that "two or three days prior to the accident" he had called Voehl's attention "to the necessity of keeping it better cleared up"; he knew that the warehouse at that time "was in a badly littered condition." The manager also had information as to Voehl's work on previous Sundays and, on respondent's request, furnished a statement of what the manager described as an "exactly parallel instance" for which Voehl had been paid, and he believed that if the records of the busy season from April to August were available, they would show other similar instances.

Upon this evidence and the findings of the deputy commissioner, the compensation order did not violate any principle of law. The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment.[1] Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. "No exact formula can be laid down which will automatically solve every case." *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 424. See, also, *Bountiful Brick Co.* v. *Giles,* 276 U. S. 154, 158. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special

[1] *Podgorski* v. *Kerwin,* 144 Minn. 313; 175 N. W. 694; *Nesbitt* v. *Twin City Co.,* 145 Minn. 286; 177 N. W. 131; *De Voe* v. *New York State Railways,* 218 N. Y. 318, 113 N. E. 256; *Grathwohl* v. *Nassau Point Club Properties,* 216 App. Div. (N. Y.) 107, 214 N. Y. S. 496; 243 N. Y. 567, 154 N. E. 608; *Gilmour* v. *Dorman, Long & Co.,* 105 L. T. (N. S.) 54.

errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service and hence within the purview of the Compensation Act.[2]

The decree of the Court of Appeals is reversed and that of the Supreme Court of the District is affirmed.

*Reversed.*

---

[2] *Jett* v. *Turner*, 215 Ala. 352; 110 So. 702; *State Compensation Insurance Fund* v. *Industrial Accident Commission*, 89 Cal. App. 197; 264 Pac. 514; *Swanson* v. *Latham*, 92 Conn. 87; 101 Atl. 492; *Ohmen* v. *Adams Brothers*, 109 Conn. 378; 146 Atl. 825; *Littlefield's Case*, 126 Me. 159; 136 Atl. 724; *Vogel's Case*, 257 Mass. 3; 153 N. E. 175; *State ex rel. McCarthy Bros. Co.* v. *District Court*, 141 Minn. 61; 169 N. W. 274; *Martin* v. *Card & Co.*, 193 App. Div. (N. Y.) 6; 183 N. Y. S. 88; *Gibbs* v. *R. H. Macy & Co.*, 214 App. Div. (N. Y.) 335, 212 N. Y. S. 428; 242 N. Y. 551, 152 N. E. 423; *McClelland* v. *Dodge Brothers*, 233 App. Div. (N. Y.) 504; 253 N. Y. S. 773; *Messer* v. *Mfrs. Light & Heat Co.*, 263 Pa. 5; 106 Atl. 85; *Cymbor* v. *Binder Coal Co.*, 285 Pa. 440; 132 Atl. 363; *Rock County* v. *Industrial Commission*, 185 Wis. 134; 200 N. W. 657; *Consolidated Underwriters* v. *Breedlove*, 114 Tex. 172; 265 S. W. 128. See, also, *McNicol's Case*, 215 Mass. 497; 102 N. E. 697; *Marks* v. *Gray*, 251 N. Y. 90; 167 N. E. 181.