Matthews, J.
That the plaintiff was employed by an employer who had complied with the Workmen’s Compensation Act and received injuries during his employment is admitted.
The jury was instructed to return a verdict for the defendant on theory that the plaintiff’s injuries were not “occasioned in the course of such workman’s employment” to which injuries compensation is limited by Section 85 of Article II of the Ohio Constitution and by Secton 1465-68, General Code. The case now comes before the court upon the plaintiff’s motion for a new trial.
*90 The evidence was that the plaintiff was a regular employee of John J. Gilligan & Son Company which was engaged in the undertaking or funeral business at 22 West Ninth street, Cincinnati, Ohio; that the plaintiff’s home was at 1563 Riverside drive, and that he received his injuries on the Eighth street viaduct, Cincinnati, Ohio, while on his way from his home to the place of business of his employer at 22 West Ninth street, in answer to a call from Mr. Gilligan to come to the office.
It was stipulated “that his services were continuously required, that is, under the terms of employment he had no specific time to go to work or quit, but he was always under order to report on call from his employer.”
The plaintiff was the only witness who testified and it was stipulated that his employer would testify to the same effect. The substance of his testimony was that he was the houseman and trimmed all caskets and would assist in going to the hospitals and homes in the conduct of the business. By houseman he explained was meant that it was his duty to keep the place of business at 22 West Ninth street in order.. He was one of three employees and their hours of service were so arranged that at least one would be at the employer’s place of business at all times during the day and night, and that there was an arrangement whereby when he was not at the place of business he would leave a telephone number with his employer and when called by his employer, he would respond immediately; that on the night of January 18, 1931, he was at his home on Riverside drive; that about six o’clock the following morning his employer telephoned to him that he was needed and to hurry to the funeral establishment at 22 West Ninth street. On receiving that order he went to the street car stop where he was struck by a passing automobile.
Now, on this evidence should a verdict have been instructed? Can it be said, as a matter of law, that the plaintiff’s injuries were not occasioned in the course of employment?
In Fassig v. State, 95 O. S., 232, the Supreme Court construed the constitutional and legislative provisions and *91 held that the language used limited compensation to such injuries as were the result of or arose out of the employment, that therefore there was no right to compensation for an injury that had its cause outside of and disconnected with the employment, although the employee might, at the time, have been engaged in the work of his employer in the usual way. In other words, the court held that some causal connection between the employment and the injury must appear.
In Industrial Commission v. Barber, 117 O. S., 373, the court said that the test of the right to an award from the insurance fund, under the Workmen’s Compensation Law, was “whether the employment had some causal connection with the injury either through its activities, its conditions, or its environment,” and accordingly held that an employee who, for the purpose of reaching his place of employment, travels a course which affords the only unobstructed access thereto enters upon the course of his employment “when he reaches the zone of such employment that is under the control of his employer even though such zone be outside the enclosure of his employer.”
In Industrial Commission v. Heil, 123 O. S., 604, the court held that an employee injured while proceeding along the public highway to the plant of his employer, from his home, on his regular trip to be at the plant at the usual hour was not entitled to compensation out of the insurance fund notwithstanding the fact that the employer had agreed to reimburse him for the expense of his transportation not exceeding five dollars per week. The court said at page 607 that “we are unable to see any substantial merit in the proposition that an employee whose duties have a fixed situs can be in the discharge of those duties when he is a mile away proceeding upon a public highway for the purpose of reaching his place of employment.”
In Industrial Commission v. Henry, 124 O. S., 616, the court held where the employee had entered upon his employment in the early morning hours, and leaving the premises of the employer to get his breakfast at a restaurant, in accordance with the custom acquiesced in by the employer, *92 and while returning to the premises of the employer by direct and necessary route along the public thoroughfare was struck by a train running upon the tracks of the railroad so immediately adjacent to the premises of the employer that the only way of ingress and egress toward the restaurant was one of hazard, the accident arose out of and in the course of the decedent’s employment.
The cases to which reference has already been made and other cases were reviewed in the recent case of Industrial Commission v. Baker, 127 Ohio St., 345 [O. L. B. & R. 2-5-34]. The facts were that Baker was an employee of the Hamilton Coke & Iron Company, his home was in Hamilton, and he was driving his automobile over a country road used generally by the public to his place of employment on one of his morning trips, so that he would be at the plant at the usual hour, when he was killed at the intersection of the tracks of the Pennsylvania Railroad Company at a point fully a quarter of a mile from the entrance of the plant at which he was employed. The employer had no control over the traffic or the means of travel adopted by the employee. The record discloses that in order to reach his place of employment it was necessary to cross a number of railroad tracks, if he traveled by the shortest route, and also to cross five interurban and railroad tracks, in addition to street car tracks within the city of Hamilton. There was another railroad track between the point of the accident and the plant in which Baker was employed. Baker had no duties whatever to perform for his employer before reaching the plant, and his travel over the public highway, which was a much traveled road, was not different from that of the general public using such highway.
The court distinguished the case of Industrial Commission v. Henry, supra, and held the employee was not entitled to compensation, holding that the case came within the principle of Industrial Commission v. Barber, supra. Among other things the court said:
“The Constitution and the statutes providing for compensation from a fund created by assessments upon the industry itself contemplate only those hazards to be en *93 countered by the employee in the discharge of the duties of his employment, and do not embrace risks and hazards such as those of travel to and from his place of actúa1 employment over streets and highways which are similarly encountered by the public generally.”
and also:
“The right to recover in the case at bar would rest upon the theory that the employee is in the course of his employment from the time he starts from home, notwithstanding he has no duty to perform until he reaches the plant of his employer. This court unanimously held the contrary in Industrial Commission v. Heil, 123 O. S., 604.”
In Auberger v. Industrial Commission, 38 O. A., 203, it was held as stated in the syllabus that “although gasoline station attendant was late for work, injury when struck by automobile after alighting from street car near employer’s premises, held not within ‘course of employment’.”
In Standard Oil Company v. Clark, 44 O. A., 211 [O. L. B. & R. 4-10-33] the evidence disclosed that, it was a part of the filling station operator’s duty, when he closed the station at night to take all money and coupon books with him to his home and that he was killed in an automobile collision while so doing. The court held that the employee’s dependents were entitled to compensation out of the insurance fund and said:
“The employment contract made it a part of his duty to take the day’s receipts home with him and care for those proceeds for his employer. When killed he was in the performance of a duty enjoined upon him by his employment.”
Industrial Commission v. Laraway, 188 N. E., 297, decided by the Court of Appeals of Lucas Co., presented the question of whether or not an employee whose work required him to sweep out holes in the street with a steel bristle broom with wooden handle and back was entitled to compensation for injury by being struck by lightning while carrying the broom. His hands were sweaty at the time and expert testimony was introduced to the effect that the combined conditions increased the hazard. The court *94 held that there was some evidence of some causal connection between the employment and the injury.
Injury by a “destructive tornado” was held, in Slalina v. Industrial Commission, 117 O. S., 329, not to give the employee a right to compensation where his duties did not expose him to a special or peculiar danger from the element that caused the injury.
These cases illustrate the divergence in facts from which the courts are called upon to determine whether the injury or death has been occasioned in the course of and arose out of the employment,.
The reasoning resorted to in all the cases has been for the purpose of determining the existence or non-existence of these fundamental requirements. Emphasis has been shifted dependent upon the circumstances presented in the particular case. If, when injured, the employee was on or near the premises of his employer the courts have analyzed the evidence to determine whether the activities, conditions or environments of the place of business had some causal connection with the injury. When the employee was not on the premises of the employer at the time, or on premises under his control, the evidence was analyzed to determine whether or not, at the time, the employee was engaged in the performance of a duty owing to the employer, in other words, whether he was in the course of his employment at the time. Then if the injury was occasioned from a hazard having causal relation to the employment it entitled the employee to compensation.
In the case at bar the plaintiff at the time he was injured was a long distance from the place of business of his employer and was in possession of none of his employer’s property at the time. Those cases involving injuries received in the zone of employment are not, therefore, of prime assistance. Nor are those where the employee rightfully was in possession of some of his employer’s personal property at the time. They do demonstrate that in every case the end sought was the ascertainment of whether the employee’s injury had been occasioned in the course of his employment from a hazard of the employment.
*95 The plaintiff was not merely employed to keep the employer’s place of busines in order, trim caskets and go to hospitals and homes when required. There was the additional duty to hold himself in readiness, at a pre-arranged place, to respond to his employer’s call, at any time, by telephone in accordance with an agreement between them. On the morning in question he was called in accordance with this pre-arranged plan and told that he was wanted to take care of the place of business during the absence of the other employees and that he should hurry there. He was on his way when injured. The novel element of fact that distinguishes this case from all the Ohio cases is that under his employment he was subject to be. called to his work at any time and was actually responding to such a call at the time he was injured. Does that variation enlarge the course of employment so as to include traveling from his home to the employer’s place of business? On more mature consideration it seems to me that it does. He was paid $25.00 per week for a continuous employment. The injury was received, therefore, during the “currency of the employment.” That fact alone distinguishes this case from the usual case of an injury received while going to or returning from work. The so-called “coming and going” doctrine denying compensation is predicated upon the fact that the injury was received outside the hours of employment when the employee was performing no duty to the employer. In such cases the employer had not directed the employee and had no right so to do. In the case at bar the contrary is the fact. It is true that the employee apparently had full liberty to choose his place of residence, but having once chosen it he was bound by his contract to go from that place to the employer’s place of business whenever called. The employer had a right under the terms of his employment to call him from his home and direct him to proceed from that place to another place. In answering such a call the employee was not at liberty to take any route he might choose. It was his duty to proceed by the most direct route in the customary manner, and any substantial deviation therefrom would *96 have been a violation of his duty to his employer. There fore, in proceeding as he did he was performing a duty owing to his employer. Duty to his employer placed him where he was injured. This, it seems to me, is the fundamental distinction between this case and the usual “going and coming” case. In the usual case the employee has complete liberty in choosing his route. He may go circuitously. He may deviate to any degree he may choose from the most direct route without violating any duty owing the employer. His only duty to his employer is to arrive at a certain place at the designated time. Not so with the plaintiff here. It must be said, it seems to me, that the plaintiff was at the place where he was injured because he had been directed to go there by his employer.
The facts of the case of Voehl v. Indemnity Insurance Co., 288 U. S., 166; 87 A. L. R., 245, are similar in many respects to the facts of the case at bar. The distinguishing fact, however, is that the employee was paid for his extra work on the basis of time consumed, from the time he left home until his return. However, it seems to me, that the court recognized the distinction which takes the case at bar out of the so-called “coming and going” class for the reason that the court said:
“While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the services may be taken to begin earlier or elsewhere. Services in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And an agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service and hence within the purview of the Compensation Act.”
In the case of Reisinger-Siehler Co. v. Perry, 167 Atl., 51, decided by the Court of Appeals of Maryland, it appeared that the claimant was employed to look after the employer’s building. As expressed by him, he was “re *97 sponsible for the building.” His regular hours of employment were from six o’clock in the morning until six o’clock in the evening. In addition thereto he was subject to call at any time and was “liable to put in eighteen or twenty hours” a day. The additional hours of work were at times when he would be called from his home to his employer’s store by a policeman because of some unusual condition of the lights at the store, or for some other cause requiring his attention. This additional work was part of his duty; and this method of notifying him that his presence was needed at the store was the one adopted and used by the employer. On the occasion in question he returned to his home between eleven and twelve o’clock at night after making a social call and was told by his neighbors that a policeman had been there, apparently concerning the store. After receiving this message he immediately walked down to the store where he found the lights on and the back door open. He went through the building, turned out the lights, and locked up the store. Then he saw the policeman at the box and told him that everything was all right. Whereupon he started for his home, taking the shortest and most direct route. While he was crossing the intersection of two streets, about two squares from his home, he was struck by an automobile and injured. There was no evidence of any express agreement between the employer and the employee relative to the duties of the employee or the remuneration to be paid the employee. The Industrial Commission allowed compensation and the question before the court was whether there was evidence to sustain the allowance. At page 52 the court said:
“As a general rule, employees who suffer injuries in going to or returning from their place of work are excluded from the benefits of the Workmen’s Compensation Act. (Code Pub. Gen. Laws 1924, Art. 101, 1 et seq., as amended.) But there are exceptions to this rule. Harrison v. Central Construction Co., 135 Ed. 170, 108 A. 874, 877; State Compensation Insurance Fund v. Industrial Accident Commission of California et al., 89 Cal. App. 197, 264, p. 514; Gibbs v. Macy, 214 App. Div. 335, 212 N. Y. S. 428, 430, affirmed by the Court of Appeals of New York, *98 242 N. Y. 551, 152 N. E. 423; Messer v. Manufacturers Light & Heat Co. et al., 263 Pa. 5, 106 A. 85; Bisdom v. Kerbrat et al., 251 Mich. 316; 232 N. W. 408; Ohmen v. Adams Bros. et al., 109 Conn. 378, 146 A. 625; Cymbor v. Binder Coal Co., et al., 285 Pa. 440, 132 A. 3663; Voehl v. Indemnity Insurance Company of North America, 288 U. S. 162, 53 S. Ct. 382, 77 L. Ed. 676; Honnold on Workmen’s Compensation, vol. 1, p. 426. See, also, annotations and cases cited in L. R. A. 1916A, 235, and L. R. A. 1918F, 907.”
Then after discussing some of the cases recognizing exceptions to the general rule, the court at page 53 summarized the facts of the case before it as follows:
“The claimant in this case was employed regularly at his employer’s store from 6 o’clock in the morning until 6 o’clock in the evening to care for the building, as stated in the evidence. When his day’s work was over, he was, of course, permitted to return to his home, but he was thereafter subject to call at any time to go to the store to care for any unusual conditions that might be found to exist there. It may be said that he had no time which he could absolutely call his own, for when he was wanted he was expected to be in a position where he could be reached and ready to go in the performance of his duty.”
And on page 54 drew the conclusion from these facts:
“There was, we think, an implied agreement from the nature and character of the employment of the claimant in the performance of the additional duties that his employment was not to be restricted to the time in which he was at work at the store on such occasions. It was in the nature of an errand or mission on behalf of his employer, and when so treated his employment commenced at the time when he left his home to go to the store, and ended when he returned to his home.”
Reisinger-Siehler Co. v. Perry, supra, appears to be directly in point. The case at bar might be said to be stronger in favor of the claimant in the respect that he was going to the place to which he had been ordered, whereas, in the cited case he was on his way to his home. As I view it, however, that difference in fact makes no *99 difference in principle. Had the employer directed the claimant to go to some other place than the regular place of business, as for instance, to a hospital, it seems clear that the employee while on the journey to the hospital would have been on an errand under specific instructions from his employer and, if injured from a hazard incident to that journey he would have been entitled to compensation. Can it be said that the fortuitous circumstance that the employer urgently needed him at the regular place of business, and, accordingly ordered him there requires the application of a different rule? The investigation which I have made in considering this motion for a new trial convinces me that it does not.
In Mitchell v. Ball Bros. Co., 186 N. E. (Ind.) 900, the employee was subject to call at any time, but at the time of his injury was not responding to any special call. On this subject the court at page 901 said:
“Although decedent was subject to call from the time he reported in until he reported out, he did ‘drop’ or ‘leave’ his work when he went to lunch, and he did not ‘take up’ his work again until he got back to the plant, except in instances when he was called from the restaurant, or elsewhere, during the lunch hour, to go to some particular place to perform certain duties. In such intsances we think he ‘took up’ his work the moment he started to answer the call. For list of cases on this point see Rogers v. Rogers, (1919) 70 Ind. App. 659, 122 N. E. 778; Schneider, Workmen’s Compensation Law, supra, 269.”
Other cases bearing some resemblance to the case at bar are Kyle v. Green High School, 208 Iowa, 1037; 226 N. W. 71; Kahn Bros. Co. v. Industrial Commission, 283 Pac. (Utah); Messer v. Manufacturers Light & Heat Co., 263 Pac., 5; Martin v. State Workmen’s Insurance Fund, 165 Atl., (Pa.) 514; Turner Day & Woolworth Handle Co. v. Pennington, 63 S. W. (2d) (Ky.) 490. The last cited case is substantially identical in facts with the case at bar.
For these reasons I have reached the conclusion that it cannot be said, as a matter of law, that the plaintiff’s injury was not occasioned in the course of his employment.
Therefore, the motion for a new trial is sustained.