**EASTERN S. S. LINES, Inc., v. MONAHAN.**

**No. 1027.**

District Court, D. Maine, S. D.

March 23, 1939.

Nathan W. Thompson, of Portland, Me., for petitioner.

Edward J. Harrigan, of Portland, Me., for respondent.

PETERS, District Judge.

This is a bill in equity to set aside by injunction, as not in accordance with law, the findings and award of a deputy commissioner made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950.

It seems that the longshoreman involved in the accident sustained his injury in 1932 while working in unloading a steamship at Portland. He was riding in an elevator down to the hold of the ship when his right foot caught under the elevator and the heel was severely crushed. As a result of the injury an ulcer developed which was slow in healing but did heal in 1935, broke down again in 1936, and has since failed to heal.

The deputy commissioner found from the evidence before him that since the accident the man has been in constant pain. In the morning the foot stands out straight, and has to be massaged for an hour to get it into normal position; that he is able to walk about one and one-half miles in the afternoon and about three-quarters of a mile in the evening. The man has had all kinds of treatment, including grafting of new flesh on the heel, use of violet rays, ointments and the services of various physicians and hospitals, without avail. The doctor called by the complainant, the employer in this case, testified before the deputy commissioner that the ulcer shows no signs of closing in and in his opinion will never heal; that no new grafting will be effective; that he is still treating the injury and recommends that the treatment be continued. The doctor gave the following technical description of the injury:

"I am of the opinion that Mr. Foley received a crushing injury of his right foot and heel that resulted in a fracture of the approximal end of the right oscalcis, with necrosis of the skin and deeper tissues from the middle of the sole of the foot to two inches above the bottom of the foot, and laterally from the internal malleolus to the external malleolus. Also with necrosis or sloughing of the tendon of Achilles."

The doctor further testified that the injured man cannot do longshore work, but that he could do work that does not require pressure or pushing into his shoe against his heel. "He couldn't do work if he were pushing a truck ahead of him where he was pressing his heel against his shoe, or anything of that sort. Of course he could run an elevator and I think he could do janitor work, and of course time-keeper."

Upon being asked "What percentage of good would you say there was in the foot for running an elevator or acting as watchman or hatchman, time-keeper etc.", he answered that there would be a small percentage of loss for that type of work, perhaps eighty percent efficient for light work. The injured workman was sixty-six years of age, his education limited to grammar school, and he had always done heavy manual labor alongshore, except for driving a team somewhat in 1916.

From the evidence before him and his examination, the deputy commissioner found:

"That the claimant is able to perform light work such as that of a watchman or running an escalator and other forms of light work that would not cause any pressure on the injured heel; that the claimant applied to his employers for such light work but none was available; that by reason of the unhealed condition of the ulcer on claimant's right heel, the pain that he experiences from the injury and his inability to obtain work that he is capable of performing, the claimant has been totally disabled since June 13, 1936, and such disability is continuing."

The award was that the employer should pay compensation for "temporary total disability" at certain rates and for different periods, "and from June 12, 1936, at the rate of $14.75 per week and continuing at that rate until otherwise ordered by the deputy commissioner."

The employer complains that the deputy commissioner made his award based on total, temporary disability, when it should have been found partial and permanent.

In the 6th paragraph of the bill the complainant alleges that it asked the deputy commissioner to find that the disability was permanent "and therefore his compensation should be fixed on the basis of permanent partial disability, but on this point the commissioner refused to rule, but on the contrary held that the said Foley was suffering from temporary total disability."

The allegation that the deputy commissioner held that the injured man, Foley, was suffering from temporary total disability seems to be a sufficient answer to the complaint that "on this point the commissioner refused to rule", because when he ruled that the disability was temporary it was a ruling that it was not permanent, and it is obvious from the language used by the deputy commissioner that his award was for temporary total disability.

The only question for this court is whether the finding of the deputy commissioner was supported by evidence. This court has nothing to do with the weight of the evidence. Voehl v. Indemnity Ins. Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245; Joyce v. U. S. Deputy Commissioner, D.C., 33 F.2d 218.

The employer complainant is very urgent that this court, by mandatory injunction, direct the commissioner to hold that the disability is permanent, believing that, in that event, a somewhat lighter burden would rest upon the employer under the statute. But from that point of view it really makes no difference to the employer whether the disability is temporary or permanent, if it is total, because under the Act in case of total disability, whether temporary or permanent, the payments of compensation continue (within the maximum limit as to amount) so long as the disability continues.

If it should be thought that there was no evidence to support the finding of permanence, there would seem to be no reason for an injunction, so long as the finding of totality stands, because the complainant would not be injured; but it may be well to consider whether the action of the deputy commissioner as a whole was illegal. The burden of so showing is upon the complainant. Grant v. Marshall, D.C., 56 F.2d 654.

■ The evidence is not that the workman here is wholly incapacitated from working at every kind of gainful employment, nor did the deputy commissioner so find. That is not required in order to find total disability under the Act. The workman's mental and educational equipment must be considered as well as the opportunities open to a man in his physical condition. The known fact that employers prefer not to hire disabled men, especially those harassed by constant suffering, should be taken into account. The disabled man here applied to this employer for some work that he might do, without avail. If this man had skill with his hands or with his head, or if he had capital, he could, of course, get along. The law was made for men of another type, to which this man belongs; laborers in lines of heavy work who, if incapacitated for such work, are practically out of commission as workers. The Act is construed liberally in their favor. Baltimore & P. Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366; Jarka Corporation v. Monahan, 1 Cir., 62 F.2d 588.

■ This workman, as a result of the accident, was wholly incapacitated from performing the heavy labor he was accustomed to for a lifetime. No doubt the doctor is right in saying that the man can do so-called light work, but there is no evidence that such is available for a man of his age and in his condition in this locality. In the absence of such a showing, and in such a situation, a finding of total disability by the deputy commissioner under this Act should not be interfered with by an injunction from this court. It was so held here in Eastern Steamship Lines, Inc., v. Monahan, Deputy Commissioner, D.C., 21 F.Supp. 535.

That seems to be the tendency of the cases in other jurisdictions. In Denton v. Chicamauga Fertilizer Co., decided by the Supreme Court of Tennessee on November 21, 1936 (a case not reported), a very similar case, the evidence showing that the employee was unable to perform heavy manual labor because such effort would cause pain and swelling in the injured parts, but that he could perform so-called light work, the court held that he was entitled to compensation for total disability, saying:

"We think that where one is permanently and totally disabled from doing manual labor of a general character, as is the case with petitioner, he is entitled to compensation for total permanent disability, notwithstanding he performs some light work, the evidence not showing that such work was available in his locality."

In Consona v. Coulborn & Co., 104 Pa. Super. 170, 158 A. 300, the court said:

"It is a matter of common knowledge that there is a general disinclination on the part of employers to give work to cripples. If suitable work was available to this man with his limitations, it was incumbent upon the appellant to show that fact."

■ If the disability is total, the fact, if it is a fact, that it is also permanent, will not justify issuing an injunction now. If the conditions change the deputy commissioner can do whatever is necessary by changing his order.

Presumably the disability was denominated "temporary" because of its character, as observed by the deputy commissioner and described by the doctor, being of the nature of a sore, commonly more superficial than an abscess, and in this case still under treatment. To be sure, the doctor is pessimistic as to his ability to effect a cure, but he may be over-modest in estimating his own skill. It can hardly be said that the deputy commissioner had no reason for describing the injury as temporary.

It may be that the injured man would be better off if his continuing troubles were put an end to by an amputation, in which case there would be no question as to length of time of the disability, and possibly increased capacity to work might follow, and a resulting financial benefit might accrue to the employer; but these features can have no weight. See Simpson v. New Jersey Stone & Tile Co., 93 N.J.L. 250, 107 A. 36.

■ If it happens, as counsel suggests is the case here, that a man may get three times as much compensation for an injury he suffers from as he would have received had he lost the limb involved, it is the fault of Congress in framing the law. The court presumes that Congress intended a result of the plain language of the Act.

The complainant in argument claimed that some payments to the claimant in the past have been made or credited erroneously. There is no mention of this in the bill, and, apparently, counsel for defendant had no knowledge of such a claim until the

948

hearing. I have no authority to consider it, but I have no doubt, as suggested by counsel, that any such error will be corrected at the request of counsel.

The application for an injunction must be denied and the bill dismissed with costs.