**LIBERTY MUT. INS. CO. et al. v. O'HEARNE, Deputy Com'r, U. S. Employees' Compensation Commission et al.**

Civ. No. 601.

District Court, Hawaii.

June 4, 1946.

J. P. Russell, of Anderson, Wrenn & Jenks, all of Honolulu, Hawaii, for plaintiffs.

James F. Gilliland, of Honolulu, Hawaii, for defendant Annie Kaulie, Edward DeNello, and Thelma Kaulei, dependents.

Ray J. O'Brien, U. S. Atty., and Edward A. Towse, Asst. U. S. Atty., both of Honolulu, Hawaii, for Stephen O'Hearne, Deputy Commissioner.

METZGER, Judge.

The Deputy Commissioner rendered an award in favor of dependents of the deceased employee, upon a finding of facts in substance as follows: The deceased was engaged in going to the place he was to perform services as an oiler for the employer, and having left the employer's time-shack, or checking-in office, sustained an accidental injury causing his immediate death when the motorcycle he was riding struck an obstruction in the road and collided with an automobile proceeding in the opposite direction.

There is no dispute that the deceased was in the employ of the Hawaiian Dredging Company, Ltd., at the instant of the fatal accident. The Deputy Commissioner at the opening of his hearing stated that his file showed that Vernon G. DeMello had checked in at the time-keeper's office at the operating base of the employer at the Pearl Harbor Navy yard and was on his way to the place where he was to perform work, and asked complainant if there was any objection to that statement, to which complainant's counsel answered, "No." At no time has it been denied that DeMello was under employment when killed. Testimony of Albert C. Croze, general superintendent of the employer, shows that the place where DeMello was as-

signed to perform work as an oiler on a steam-shovel was at Barrow Pit, Manana Gulch, about three and one-half miles from inside Pearl Harbor gate where he checked in at the company's time-shack at 7:30 on the morning of the fatal accident and received his number or "bango" (identification number-tag) for the day.

This leaves no element in dispute other than the question: Did the fatal accidental injury occur while DeMello was acting in the course of his employment?

Complainant contends that it did not, because, after checking in, he did not ride toward his work on a company truck, a means of conveyance that was available to him and other employees, but was riding, without the company's consent, on a motorcycle not under the management and direction of the employer, and contends that the employer did not intend or contemplate that the employee should assume such a risk, and in doing so he placed himself outside of its liability as and while in the course of employment.

The main basis for this contention is that the employer had a rule, which was shown to have been imparted orally by certain superintendents and foremen to its employees who had automobiles, that travel by other automotive means than company trucks from the time-shack to the work sites was forbidden.

A difficult question arises in many cases to determine if the employee was acting in the course of his employment at the time injury occurred. The books contain many such cases and, of course, depending on the particular circumstances of each case, decisions go both ways.

█ I do not consider this a difficult case in any sense. The employee had gone to the employer's time-shack office in the morning of the accident and had checked in for his day's work; it was then necessary for him to go to the place where his work was assigned, about three and one-half miles distant by public highways. He undertook to make the trip by motorcycle, a means used in late years by a great number of workers on war projects in Hawaii, as is well known to nearly all persons who use the public highways in and about

Honolulu, and a fact of which this Court must take judicial notice. While the evidence shows that conveyance by a company operated truck was available to him and that he generally rode from the time-shack to his work in a dump truck, there is no evidence to show that he had ever been told by anyone that the employer demanded, or even preferred, that he travel on its trucks. If the employer, after making trucks available for the purpose, expected and contemplated that he and other employees were to use company trucks exclusively for conveyance to work, after receiving their bangos at the time-shack, it should have taken appropriate means of so informing them, either by notice conspicuously posted, or some other equally effective means, or have procured an acknowledgment of each employee affected that he was orally so informed. It did not do so. From the evidence it appears that there was no notice given of such a rule or desire on the part of the company, except by word of mouth, and it is quite certain that the employer could have no more than a surmise that all its employees were told it was expected that they should use the means of conveyance provided by it.

As to the deceased employee, DeMello, the evidence indicates that he was not even orally informed of such a rule or contemplation. The testimony of Mr. McCubbin, in charge of the company's transportation (Tr.Ev., p. 21), shows, in answer to a question, "Do you recall whether you spoke directly to DeMello, or not?" He replied, "No, I don't believe I ever did, because I did not know he had a car." And in the testimony of George Farr, a long-time employee and the operator of the steam-shovel upon which the deceased worked (Tr.Ev., p. 24), the following appears:

"Q. Did you have a car of your own? A. Yes, sir. Q. Did you leave it at Pearl Harbor and ride out on the trucks, always? A. I ride from home to the job on a company truck, and from the bango-shack to where I work on a truck.

"Q. You did not use your own car at all? A. No.

"Q. Did you understand that you were required to use the company truck? A. No; no one told me."

Down through the years the legal interpretation of the meaning of the phrase used in workmen's compensation laws, "out of and in the course of employment," has undergone some changes, but, having been a fairly attentive observer of this law for over thirty-three years, I feel that the meaning of this phrase is well settled today. In a late case, Liberty Mutual Insurance Company et al. v. Cardillo et al., App.D.C., 154 F.2d 529, 531, a statement is made which I believe fairly expresses the spirit, purpose and meaning of this part of the law, as follows:

"The right to compensation under the act depends, of course, upon the existence of the relation of master and servant at the time of the injury. The liability is based, the Supreme Court [Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532] has said, 'not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured.' Continuing the Supreme Court said, 'And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory though it need not be the sole or proximate cause. * * *'

"No exact rule can be formulated from the decisions beyond the broad generality of the Voehl case that ordinarily injuries received while going to and from work are not compensable, and the category of exception set out in Ward v. Cardillo, supra [77 U.S.App.D.C. 343, 135 F.2d 260]. The reason for the general rule expressed in the Voehl opinion [Voehl v. Indemnity Ins. Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245] is that during the journeys to and from work, usually the master and servant relation does not exist. During the relation, the employee must go where he is told to go, must do

what he is told to do, when and where he is instructed to do it. He is following, not his will, but the will of his employer; so, if he is hurt while going or doing as he has been instructed, his injury is compensable. But when the relation ends, he is again a free agent, choosing his own way, and the time and place of his own acts; if injured, there can be no compensation because there is no causal connection between the injury and the employment."

The clearest statement of the law that has ever been made does not always settle the minds of persons holding diverse interests, for views of minute facts often give shades of meaning that tend to bring a case within or without the law.

In the present case the complainant is greatly impressed with the view that travel by motorcycle is unusually dangerous and that everyone, including workmen, should so recognize it. I have no special knowledge on this subject and no evidence was given, therefore I must believe that it depends, generally and to a large extent, upon the skill, experience, and carefulness of the respective drivers whether it is more or less dangerous than travel by autotruck. Persons will differ in their views as to whether travel by horseback or horse drawn vehicles is more hazardous than by automotive conveyance. Likewise, some persons hesitate to travel by rail and others refuse to travel by air.

It appears that it was necessary for DeMello to travel by some reasonably speedy means, equal to the speed of the employer's trucks, and go upon the highway from the employer's check-in office to the work site. This was incident to and in the course of his employment. In the absence of definite directions from his employer, it was within his personal discretion to take any means available to timely arrive at his work. From the time he received his bango for the day he was in employment, and in going forward to his work he was in the course of his employment. There was a causal connection between his injury and his work, the same as if he had been injured in the company's truck. Wherefore, I see no reason to con-

clude that the Deputy Commissioner's award was not in accordance with the law and his authority to make such an award; therefore,

The complaint is dismissed.