**CRESCENT WHARF & WAREHOUSE CO. et al. v. CYR et al.**

**No. 13163.**

United States Court of Appeals
Ninth Circuit.

Dec. 15, 1952.

Stephen J. Grogan, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., and Clyde C. Downing, Asst. U. S. Atty., Los Angeles, Cal. (William S. Tyson, Sol. of Labor, Ward E. Boote, Asst. Sol. of Labor, Herbert P. Miller and James Edward Hughes, Attys., U. S. Dept. of Labor, Washington, D. C., of counsel), for appellees Cyr & Pillsbury.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

Appellants, as complainants in the District Court, by appropriate proceedings sought to enjoin a compensation order and award of death benefits made by Albert J. Cyr, an accredited Deputy Commissioner under the Longshoremen's and Harbor Workers' Compensation Act[1] to Betty Anderson, the widow of Robert Lee Anderson, deceased, whose death occurred while he was employed by Crescent Wharf & Warehouse Company, a corporation, as a longshoreman on board the U.S.S.S. Oglethorpe at Los Angeles Harbor. Appellant Pacific Employers Insurance Company, a corporation, is a compensation insurance carrier of the employer.

The claim for compensation which was filed by the widow was contested by the employer and insurance carrier on the ground that the deceased came to his death through cause of a heart condition and not as the result of any injury or accident or anything connected with his employment. Both sides offered evidence with respect to the issue at a hearing conducted by the Deputy Commissioner on December 5, 1950, and at a continued hearing on December 20, 1950, and upon all the evidence before him the Deputy Commissioner issued the questioned compensation order whereby on January 16, 1951, he awarded death benefits to the widow.

The interposition by mandatory injunction of the court below was asked by complainants against the Deputy Commissioner for the reason, as complainants alleged, that it is not in accordance with law because based upon an erroneous conclusion of fact or an absence of facts to justify the re-

1. 33 U.S.C.A. § 921(b).

quisite ultimate determination by the Deputy Commissioner that Robert Lee Anderson's death was the result of an injury "arising out of and in the course of employment". 33 U.S.C.A. § 902(2).

The cause was duly submitted to the District Court on the official report of all proceedings and exhibits before Deputy Commissioner Cyr which eventuated in his award. A judgment that complainants take nothing by reason of their libel for injunction, and that it be dismissed with costs to defendants was docketed and entered in the court below. It is from such judgment that this appeal was taken.

Appellants designate the sole point on appeal as follows: That the compensation order is not supported by any substantial evidence, the entire record showing that Robert Lee Anderson died of heart disease and that there is no evidence whatsoever by any medical witness, either oral or by a written report, which establishes any causal connection between the heart disease of decedent Robert Lee Anderson and said decedent's employment.

The epitomized facts adduced at the initial hearing show that deceased sustained a severe heart attack around 3:00 a.m. on August 12, 1950, while working with fellow longshoremen in loading the U.S.S.S. Oglethorpe. He died from this attack at 6:30 a.m. the same day. There was medical testimony offered by appellants herein to the effect that the deceased had hypertensive heart deficiency and severe arteriosclerosis in October of 1949, which was professionally noticed by a physician while then primarily treating Anderson on an industrial basis for an injured toe. The hypertensive treatment alleviated Anderson's heart condition somewhat and Anderson continued work as a longshoreman without any medical attention until brought into the emergency room at a hospital in Long Beach closely following his collapse while working on the Oglethorpe on August 12, 1950.

Unsworn ex parte written medical statements by the two physicians who attended Anderson after the fatal event aboard the Oglethorpe, which the Deputy Commissioner admitted in evidence showed that Anderson was then obviously in extremis with a very high hypertension, left ventricular failure and pulmonary edema, and that in their opinion the immediate cause of death was hypertensive heart disease, without any evidence before such attending doctors of contributing causes which might be secondary to Anderson's work. There was unconfirmed hearsay history of Anderson's having been a chronic heavy drinker, and upon being questioned as to the nature of Anderson's illness, some unnamed man who claimed to have been working with Anderson, stated that Anderson was standing beside one of the hatches into the hold, when suddenly his knees crumpled and he fell to the deck backwards. One of such doctors made out the death certificate, which lists the cause of Anderson's death as "Hypertensive heart disease—1 yr." No autopsy was made and no medical reports were submitted by the claimant in the hearings before the Deputy Commissioner.

The claimant, Mrs. Anderson, testified that her husband, the deceased, had eaten his regular meals and slept his normal period the day before his death; that he had normally gone about his routine activities and outside chores around home and had not complained of being sick for several days before the incident aboard the Oglethorpe; that she had ridden with him in their car part of the way to his work that evening and that he had not complained of being sick or not feeling well except that he had been for three nights working very hard and was very tired; that as far as she knew he was in good health for several days before August 12, 1950.

Five of the fellow longshoremen of Anderson who were working with him on the Oglethorpe at the time of his collapse gave consistent and credible eyewitness testimony of the occurrences aboard ship that night and detailed the arduous work which Anderson was doing up to the time of his incapacity.

During the loading job which started at about 7:00 p.m., Anderson, aged 52, made no complaint of feeling badly and apparently "acted normally" to one who had known him and worked with him as a longshore-

man for several years. This man testified that Anderson was always a hard worker and that during the loading operations "he was in there muling like a dog." They sat together at the workers' lunch period during the midnight hour when Anderson partook of a very substantial dinner. Resuming work on the Oglethorpe it was found that a strongback of a hatch, a ship's appliance usually very easily moved, had become jammed and stuck so as to prevent Anderson and his fellow longshoremen from completing the job. The hatch foreman asked the group with which Anderson was working to loosen and free the rigid beam. This work entailed, in the language of one of the group, "putting everything we had in it trying to move it, but it wouldn't even budge," with the use of crowbars and ropes. During this strenuous operation by all of Anderson's group, of pulling and straining, lasting "roughly" forty-five minutes, it finally, after Anderson's mishap, became necessary to hook a winch onto the stuck strongback to move it effectively. Anderson at the moment of his collapse was very vigorously tugging on a rope fastened to the rigid hatch beam in a strenuous effort to move it when he fell backward striking with such force that there were blood spots, in the words of an eyewitness, "all over the bulkhead."

At the continued hearing on December 20, 1950, and over the objection of George Love, an officer of a Longshoremen's Union, who appeared for Anderson's widow, the Deputy Commissioner accepted in evidence on the offer of the attorney for appellants herein a written communication or "report" addressed to appellants and their attorney dated December 19, 1950, by a medical doctor and "cardiologist." This *ex parte* unsworn instrument stated in substance that the writer had reviewed and "sincerely" considered the official reports of all of the proceedings before the Deputy Commissioner up to but not including those of December, 20, 1950, and that from such evidential material he was of the opinion that the "incident of August 12, 1950, while on board the U.S.S.S. Oglethorpe did not

cause or precipitate the demise of Robert Lee Anderson nor did it precipitate or aggravate the existing pathology," and further, that in his opinion, "there was no causal relationship between the death and (Anderson's) occupation."

Mrs. Anderson testified further at the December 20, 1950 hearing that for more than over a year Anderson had not been drinking "except a beer now and then" and that he never had been to her knowledge a whisky drinker and never kept liquor in the house.

The only question of law in this appeal is whether there was substantial evidence, under the sanctioned broad powers of the Deputy Commissioner[2] warranting him under the whole record to make the questioned order of award. O'Leary, Deputy Com'r v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Contractors v. Pillsbury, Deputy Com'r, 9 Cir., 150 F.2d 310.

The crux of the appellants' contention is that because of the absence of any medical evidence showing that Anderson's death arose out of and in the course of his employment, the Deputy Commissioner was required under the record as a whole to find in accordance with the medical reports accepted in evidence by the Deputy Commissioner which ruled out any causal relationship between Anderson's death and his work on August 12, 1950. We cannot accede to such contention.

No rule of law, in the consideration of claims of maritime workers, under the Longshoremen's and Harbor Workers' Compensation Act is more firmly established than that logical deductions and inferences which reasonably may be and are drawn by the Deputy Commissioner from the evidence before him are the equivalent of established facts and are not judicially reviewable.

And even in compensation cases where under the record more than one possible causative conclusion could have been reasonably drawn by the Deputy Commissioner, under his prerogative in evaluating

**2.** Title 33 U.S.C.A. §§ 920, 923(a).

evidence in the light of the remedial purposes of the Act, the court cannot review or annul his findings of fact. Parker, Deputy Commissioner v. Motor Boat Sales, Inc., 314 U.S. 244, 246, 62 S.Ct. 221, 86 L.Ed. 184; Vochl v. Indemnity Insurance Company of North America, 288 U.S. 162, 53 S. Ct. 380, 77 L.Ed. 676.

■ It is clear from the findings of fact that the Deputy Commissioner gave consideration to the medical evidence notwithstanding its legal infirmity in some respects.[3] He found that Anderson was suffering from a "far advanced arteriosclerotic condition," which fact was shown entirely by the medical testimony.

It is to be observed that none of the physicians who submitted written statements of opinion in the nature of reports to the insurance carrier, except Dr. Lajoie, had any information whatever as to the excessive strain, tension and exertion that accompanied and was part of Anderson's final work on the Oglethorpe.

Dr. Lajoie it is true had read the official report of the proceedings before the Deputy Commissioner up to the date of his letter of December 19, 1950, but he had no knowledge of matters testified to by Mrs. Anderson at the continued hearing on December 20, 1950, as to the degree of her husband's drinking habits which disputed the probability that Anderson was a chronic heavy drinker upon which condition in part, the doctors predicated their opinions that the death of Robert Lee Anderson was due to natural causes regardless of his work on the Oglethorpe on August 12, 1950.

The Deputy Commissioner, however, is not bound to accept the opinion or theory of any particular medical witness upon the crucial question of the causal connection between Anderson's work on August 12, 1950, and his death on the same day. He may rely upon his own observation and judgment in conjunction with all the evidence before him. This he did in determining that Anderson's unusual effort in relation to the jammed strongback on the Oglethorpe aggravated his pre-existing pathology and brought on his death. Cf.

Contractors, etc., v. Marshall, Deputy Commissioner, etc., 9 Cir., 151 F.2d 1007.

We are of the opinion that the District Court was not in error in holding that there was substantial evidence to support the findings of the Deputy Commissioner.

The judgment is affirmed.

3. Southern Stevedoring Company v. Voris, Deputy Commissioner, 5 Cir., 190 F.2d 275.