**Earnestine SHIVERS, Petitioner,**

v.

**NAVY EXCHANGE; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 96–2578.**

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1998.

Decided May 18, 1998.

---

**ARGUED:** Robert Elliott Walsh, Rutter & Montagna, L.L.P., Norfolk, VA, for Petitioner. Randall Bruce Pennington, Navy Exchange Service Command, Virginia Beach, VA, for Respondent. **ON BRIEF:** Matthew H. Kraft, Rutter & Montagna, L.L.P., Norfolk, VA, for Petitioner. John J. Short, Navy Exchange Service Command, Virginia Beach, VA, for Respondent.

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and CHAMBERS, United States District Judge for the Southern District of West Virginia, sitting by designation.

Reversed and remanded by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge NIEMEYER and Judge CHAMBERS joined.

## OPINION

WILKINSON, Chief Judge:

Earnestine Shivers appeals from a final order of the Benefits Review Board denying her claim for benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. Shivers' claim was found barred by the "coming and going" rule because her injury was deemed to have occurred on the way to work rather than on the premises of her employer, Navy Exchange. Because we find that the parking lot in which Shivers suffered her injury is part of her employer's premises, we reverse the Board's order denying Shivers benefits under LHWCA.

### I.

Shivers worked at Navy Exchange, a nonappropriated fund instrumentality. The Exchange is a retail store located in a mall on the Norfolk Naval Base. Shivers worked as a sales clerk in the men's department of the store. On March 5, 1993, she drove to work and parked, as she normally did, in the employee parking lot opposite the store's employee entrance. When Shivers went to step onto a median strip of grass in the parking lot, she slipped and fell. As a result of her injuries, Shivers underwent surgery on her leg and was still under the care of an orthopedic surgeon over one year later. The parties stipulated that Shivers suffers a temporary total disability as a result of her 1993 injury.

Navy Exchange maintains the parking lot for the exclusive use of its employees. The lot contains approximately 100 parking places and is located on the side of the store, about 100 feet from the employee entrance. Two signs posted in the lot read "Employee Parking By Permit Only" and "Employee Parking By Permit Only; Violators Will Be Towed At Owner's Expense." To enforce these parking restrictions, Navy Exchange issues parking decals to its employees. The Exchange also patrols the employee lot and maintains its own towing service to remove cars found in the lot without the required parking decal. Employees are permitted to park in the customer parking lot only if the employee lot is full, and then only in the last two rows.

Navy Exchange does not actually own the property on which its employee lot is located. Although the Department of the Navy owns that property, the Exchange directs its own employees to perform certain work on the lot for the sake of appearance. For example, store employees mow the grass around the building, including on the median strip where Shivers slipped and fell. Additionally, Navy Exchange employees remove trash from the employee lot and operate a street sweeper to clean both the employee and customer lots. Finally, when it snows, store employees are directed to salt the sidewalks that lead to the employee parking lot. The Exchange is not equipped, however, to perform major structural repairs to the lot and therefore relies upon the Navy for such maintenance work.

Shivers filed a claim for benefits under LHWCA in June 1993. After conducting a hearing, the Administrative Law Judge concluded that Shivers was not injured in the course of employment because the employee parking lot was not part of Navy Exchange's premises. The ALJ further held that Shivers' claim did not fall within an exception to the "coming and going" rule. Shivers appealed to the Benefits Review Board. Because her appeal had been pending for over one year as of September 12, 1996, the ALJ's decision was affirmed and is considered to be the final order of the Board. 33 U.S.C. § 921 note. Shivers now appeals that order.

## II.

■ LHWCA represents a congressional judgment that certain employees should be compensated for workplace injuries without regard to fault. An employee may recover benefits under the Act, however, only for accidental injuries "arising out of and in the course of employment." 33 U.S.C. § 902(2). This language, which is contained in most workers' compensation statutes, has been read to exclude coverage for injuries sustained by employees while coming to or going from work. *Voehl v. Indemnity Ins. Co.,* 288 U.S. 162, 169, 53 S.Ct. 380, 382, 77 L.Ed. 676 (1933); *Perkins v. Marine Terminals Corp.,* 673 F.2d 1097, 1102 (9th Cir.1982). Once an employee arrives on her employer's premises, however, the coming and going rule no longer precludes recovery of workers' compensation benefits. "As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours ... are compensable." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 15.00 (1997); *see Durrah v. Washington Metro. Area Transit Auth.,* 760 F.2d 322, 324 (D.C.Cir.1985).

■ The ALJ denied Shivers' claim under LHWCA because he found that Navy Exchange's employee parking lot was not part of its premises. He concluded that, because the Navy owned the property on which the employee lot was located, it could not be considered part of Navy Exchange's premises. The ALJ also determined that the Exchange did not exercise sufficient control over the lot to make it part of its premises.

■ We disagree. The single legal issue presented in this appeal is whether a parking lot maintained by an employer for its employees should be considered part of that employer's premises for purposes of LHWCA's course-of-employment requirement. Along with the majority of courts considering this question under similarly worded workers' compensation statutes, we hold that such a parking lot is part of the employer's premises. The leading treatise in the field explains: "As to parking lots owned by the employer, *or maintained by the employer for its employees,* practically all juris-

dictions now consider them part of the 'premises,' whether within the main company premises or separated from it." 1 *Larson's Workers' Compensation Law* § 15.42(a) (emphasis added) (footnote omitted).

According to the ALJ's factual findings, Navy Exchange did designate the lot in which Shivers slipped and fell as an exclusive employee parking lot. The Exchange specifically posted signs in the lot both indicating the applicable parking restrictions and warning of enforcement measures that would be taken against violators. Navy Exchange also issued its employees special parking decals that permitted them to park their cars in the employee lot. The Exchange even employed persons to patrol the lot and tow cars illegally parked there. Finally, Navy Exchange prohibited its employees from parking in the customer parking lot, unless the employee lot was already full. In sum, although Navy Exchange did not actually own the parking lot property, it did direct its employees to park there and had an active hand in controlling the lot. Accordingly, we find that the lot bears a sufficient connection to Navy Exchange's workplace such that the parking lot should be considered part of its premises for purposes of recovery under LHWCA.

 Navy Exchange argues primarily that the Board's decisions in *Cantrell v. Base Restaurant, Wright–Patterson Air Force Base,* 22 B.R.B.S. 372 (1989), and *Harris v. England Air Force Base Nonappropriated Fund Fin. Management Branch,* 23 B.R.B.S. 175 (1990), require the denial of Shivers' claim for benefits. Of course, because the Benefits Review Board is not a policymaking agency, we owe its interpretation of LHWCA no special deference. *See v. Washington Metro. Area Transit Auth.,* 36 F.3d 375, 383 (4th Cir.1994). Nevertheless, neither *Cantrell* nor *Harris* dictates the result Navy Exchange seeks in this litigation. In *Cantrell,* the employer "did not tell claimant to park in any particular area.... [The] Em-

ployer had no direction or control over the means by which employees arrived at work." 22 B.R.B.S. at 373. Similarly, in *Harris,* the Board based its decision on the fact that the employer "lack[ed] any control over or responsibility for the condition of the area surrounding the building it occupies, including the parking lot where claimant's injury occurred." 23 B.R.B.S. at 178. Unlike the employers in *Cantrell* and *Harris,* Navy Exchange did exercise significant control over where its employees parked. The Exchange affirmatively designated an employee parking lot, prohibited employees from parking elsewhere unless that lot was full, and actively enforced parking restrictions through a system of signs, decals, and towing. This designation, operation, and control of the employee lot provides the key distinction between Shivers' case and the Board decisions cited by both the ALJ and Navy Exchange.[*] Our holding is not sweeping. We do not suggest that LHWCA provides workers' compensation for all injuries suffered in parking lots used by employees. Navy Exchange's direction and control of its employee-designated parking lot, however, persuade us that the lot should be considered part of the employer's premises. Shivers' injury, therefore, did occur in the course of her employment and she is thus entitled to benefits under the Act.

### III.

For the foregoing reasons, we reverse the Board's denial of Shivers' petition and remand for a determination of benefits.

*REVERSED AND REMANDED.*

---

[*] Even were these factors insufficient to distinguish the Board's prior decisions, Navy Exchange also directed the upkeep of its employee lot. The ALJ found that Navy Exchange employees directed "the day-to-day housekeeping of the lots" and even mowed the grass surrounding the store and on the median strip in the employee lot. Additionally, Exchange employees were directed to salt the sidewalks leading to the employee lot when it snowed. Although Navy Exchange did not perform major structural repairs, it was able to control the conditions of the employee lot to a significant degree.